IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOANN G.,<sup>1</sup>            )
                              )
        Plaintiff,            )
                              )           CIVIL ACTION
v.                            )
                              )           No. 19-1017-JWL
ANDREW M. SAUL,<sup>2</sup>    )
Commissioner of Social Security, )
                              )
        Defendant.            )
_____)

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614(a) of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c(a) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSI on January 29, 2015. (R. 16, 184-93). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erroneously evaluated the opinion of her therapist, Ms. Droge, LSCSW, and failed to include sufficient limitations in the mental residual functional capacity (MRFC) assessed to account for the limitations Ms. Droge opined regarding concentration, persistence, and pace and which the ALJ accepted.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920 (2017);[3] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

---

[3] Citations in this decision to the Code of Federal Regulations are to the 2017 edition except as otherwise indicated.

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.     Discussion

Ms. Droge is a therapist who treated Plaintiff for 11 or 12 sessions in 2017, submitted a medical source statement opining regarding Plaintiff's mental abilities and limitations, and testified regarding Plaintiff's condition at the ALJ hearing.  (R. 22-23,[4]

---

[4] At page 7 of the decision, the ALJ refers to Ms. Droge as "Janet Groge" (R. 22), but at page 8 he correctly refers to her as "Janet Droge." (R. 23).  The court will consistently refer to her as Ms. Droge.

56-57, 396-97). Plaintiff points out that the ALJ accorded some weight to Ms. Droge's opinion and found that the "significant social and adaptation limitations that Ms. Droge identified are not consistent with other evidence of record." (Pl. Br. 11) (quoting R. 23). She argues that the ALJ appeared to credit the limitations in concentration, persistence, and pace about which Ms. Droge opined but failed to include those limitations in the RFC he assessed. Id.

Plaintiff acknowledges that "[o]ut of 20 areas of mental functioning, [Ms. Droge] opined [Plaintiff] had a mild limitation in eight areas, a moderate limitation in three areas, a marked limitation in four areas, and an extreme limitation in five areas." Id. at 12. Plaintiff argues, "the ALJ failed to include in the RFC limitations in absenteeism, off-task behavior, maintaining attention and concentration, the need for special supervision, and the ability to work in proximity to others." Id. While none of the 20 mental abilities about which Ms. Droge opined is included verbatim within Plaintiff's statement of what "the ALJ failed to include in the RFC," the court understands her to argue that the ALJ should have included Ms. Droge's assessment of moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and the ability to sustain an ordinary routine without special supervision; and her assessment of extreme limitations in the ability to maintain attention and concentration for extended periods, the ability to work in coordination with or proximity to others without being distracted by them, and the ability to complete a normal workday and workweek without interruption from psychologically based

5

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

Plaintiff argues the ALJ's analysis was insufficient because the only regulatory factor he assessed was that Ms. Droge treated Plaintiff. She argues that the ALJ's assessment conflicts with Ms. Droge's opinion and he is required by <u>Soc. Sec. Ruling</u> (SSR) 96-8p and case law to explain why a limitation in an opinion is not adopted, and he did not do so in this case. (Pl. Br. 13-14) (citing <u>Haga v. Astrue</u>, 482 F.3d 1205, 1208 (10th Cir. 2007)). Plaintiff also argues that Ms. Droge's opinion is supported by the opinion of Dr. Neufeld[5] to which the ALJ accorded partial weight. <u>Id.</u> at 17-18.

The Commissioner argues that the ALJ evaluated the entire record in assessing RFC but Plaintiff narrowly focuses on Ms. Droge's opinion. (Comm'r Br. 7). He argues that when the decision is considered as a whole it reveals the reasons the ALJ discounted the limitations Ms. Droge opined with regard to attention and concentration. <u>Id.</u> at 8-9. He argues that Dr. Neufeld's opinion supports the ALJ's decision, and it was appropriate to discount a portion of Dr. Neufeld's opinion because it was vague. <u>Id.</u> at 11. He points out that where the evidence will support both the findings of the ALJ and contrary findings the court must accept the ALJ's findings. <u>Id.</u> at 11-12. Finally, he argues that the ALJ addressed at least the regulatory factors of treatment relationship, supportability, and consistency, and that a factor-by-factor discussion is not required. <u>Id.</u> at 12.

---

[5] The court notes that in the argument section of her brief Plaintiff referred to Dr. Neufeld as Dr. Neufield (Pl. Br. 17-18) but in her statement of facts she correctly referred to him as Dr. Neufeld. (Pl. Br. 5-6). The Commissioner's Brief reflects the same dichotomy. (Comm'r Br. 3-4) (Dr. Neufeld; <u>id.</u> at 11 (Dr. Neufield).

6

In her Repy Brief, Plaintiff argues that the Commissioner's argument relies on the ALJ's analysis of the Commissioner's Psychiatric Review Technique (PRT) at steps two and three of the sequential evaluation process but assessment using the PRT and assessment of MRFC "are two different tools used for two different functions." (Reply 2). She argues:

> The ALJ's PRT finding that [Plaintiff] had only a moderate limitation in concentration, persistence or pace does not correlate to an appropriate assessment of Ms. Droge's medical opinion after affording the opinion some weight and appearing to credit the limitations in the opinion for sustained concentration and persistence.

Id. at 3.

### A.    The ALJ's Findings

In his step three analysis, the ALJ applied the Commissioner's PRT and assessed the severity of Plaintiff's mental impairments. He found that she has moderate limitations in three broad areas of mental functioning: understanding, remembering, and applying information; interacting with others; and concentrating, persisting, or maintaining pace. (R. 19-20). He found she has a mild limitation in the broad mental functional area of adapting or managing oneself. (R. 20). In making these findings, he relied upon certain record evidence which the court will note as it relates to the issues presented here.

The ALJ noted that Dr. Neufeld (the psychological consultative examiner) "observed that the claimant's mentation was normal [and] she did not exhibit gross mental confusion nor disturbances of logic." Id. at 19 (citing Ex. 9F/3, R. 381). He noted evidence of her interactions:

7

> During the psychological consultative examination, the claimant made appropriate eye contact and interacted with the examiner in a friendly and appropriate manner (Ex. 9F/3[, R. 381]). The claimant has reported that crowds and people make her uncomfortable, but she does in-store shopping (Ex. 6E/12[, R. 255]). She also interacts with others, including other parents, on social media and through social networking (Ex. 6E/13[, R. 256]).

(R. 19). He explained the specific bases for his assessment of a moderate limitation in concentrating, persisting, or maintaining pace:

> The claimant has a valid driver's license and drives on a regular basis (Ex. 9F/2[, R. 380]). During the psychological consultative examination, the claimant's thought processes, as evidenced by her speech, were clear, coherent, organized, and logical; there were no gross deficits with regard to either receptive or expressive language (Ex. 9F/3[, R. 381]). Although treatment notes described the claimant as distractible (Ex. 3F/16; Ex. 4F/4[, R. 347, 359]), she did not appear distractible during the consultative examination, and a clinical assessment of attention and concentration revealed no gross deficits (Ex. 9F/3[. R. 381]).

Id. at 20. He noted evidence of her adapting and managing herself:

> During a February 2015 mental health intake assessment, the claimant was observed to keep her emotions in check when discussing her issues (Ex. 3F/9[, R. 340]). The psychological consultative examiner similarly observed no signs of impulsivity, recklessness or endangering attitudes, or uncontrolled or unmanageable behaviors (Ex. 9F/3[, R. 381]). The claimant cares for her minor daughter including taking her to school and attending her school activities, and she assists her parents with activities such as grocery shopping and preparing to move (Ex. 6E/9; Ex. 9F/2; Testimony[, R. 37-55, 252, 380]).

Id.

The ALJ assessed Plaintiff's MRFC and found she can "perform unskilled work that does not require more than occasional contact with the public and coworkers. The claimant cannot perform work at a high production rate, but she is able to perform work that requires a medium or low production rate pace." Id. at 20-21 (finding no. 4) (bold

8

omitted). In assessing RFC the ALJ found Plaintiff's allegations of disabling mental symptoms "not entirely consistent" with the record evidence because she participated in limited mental health treatment and "the mental status examinations have essentially been within normal limits." (R. 21-22). He summarized Plaintiff's mental health treatment, including Ms. Droge's testimony at the hearing.

> The claimant participated in a mental health intake assessment in early February 2015 (Ex. 3F/7-9[, R. 338-40]). She was then evaluated for medication management later that month and started on a psychotropic medication (Ex. 3F/15-17[, R. 346-48]). Unfortunately, the claimant reported medication side effects at a follow up appointment in March 2015, so a different medication was prescribed (Ex. 4F/3[, R. 358]). At that appointment, the claimant also reported that she was in the process of completing paperwork in order to begin therapy (Ex. 4F/3[, R. 358]), but the medical evidence of record does not include any subsequent therapy treatment notes. The March medication management appointment was the last face-to-face contact that the claimant had with her mental health provider, and she was thus discharged in January 2016 (Ex. 14F[, R. 391-94]). At the hearing, Janet [D]roge, the claimant's therapist testified that she first saw the claimant in January 2017; however, there was then a gap in treatment until March or April of that year, and Ms. [D]roge resigned from her position in mid/late June. Reflecting on that relatively short treatment relationship, Ms. [D]roge testified that the claimant has one of the most severe cases of PTSD that she has seen; however, Ms. [D]roge provided little objective information describing or addressing the claimant's individual symptoms and limitations, and the record does not include any associated treatment notes. Meanwhile, the mental status examinations contained in earlier treatment notes record that, despite being distractible, the claimant was fully oriented and demonstrated a logical thought process and normal thought content along with an intact recent and remote memory (Ex. 3F/6-8, 16; Ex. 4F/4[, R. 337-39, 347, 359]).

Id. at 22.

The ALJ explained his evaluation of the opinions of six medical sources in his decision and stated the weight he accorded to each. They were the opinion of the psychological consultative examiner, Dr. Neufeld, partial weight; two opinion of Ms.

9

Droge, her medical source statement, some weight, and her testimony at the hearing, little weight; a global assessment of functioning (GAF) score of 47 assessed in February 2015, "limited weight because it is not consistent with the associated mental status examination;" the opinion provided by the state agency psychologist, Dr. Wilkinson, at the initial determination in April, 2015, great weight; and the opinion provided by the state agency psychologist, Dr. Adams, at the reconsideration determination, "less weight than the opinion of Dr. Wilkinson." (R. 23-24). The court quotes the ALJ's evaluation of the opinions of Dr. Neufeld, Ms. Droge, Dr. Wilkinson, and Dr. Adams.

> Psychological consultative examiner Jason E. Neufeld, PhD, examined the claimant in December 2015 and provided the following opinion. The claimant remains capable of understanding and remembering complex instruction, maintaining concentration and pace with complex instruction, and adapting and making judgments related to complex instruction (Ex. 9F/4). However, the claimant's ability to maintain adequate persistence over the course of a typical 40-hour workweek remains uncertain (Ex. 9F/4). Despite some interpersonal hypervigilance, the claimant would not be entirely precluded from maintaining moderate levels of contact with the public, coworkers, and supervisors (Ex. 9F/4). She would be able to manage her own funds (Ex. 9F/4). This opinion is given partial weight because Dr. Neufeld examined the claimant, but portions of the opinion are vague, specifically, the claimant's ability to persist over the workweek; "moderate" social contact is also difficult to quantify and interpret.
>
> Janet Droge, LSCSW, provided an opinion dated June 2017 that included the following limitations (Ex. 15F/2-3). The claimant is mildly limited in her ability to understand, remember, and carry out very short and simple instructions, but she is extremely limited in her ability to maintain attention and concentration for extended periods and in her ability to complete a normal workday and workweek (Ex. 15F/2-3). Socially, the claimant is markedly limited in her ability to interact appropriately with the general public as well as in her ability to accept instructions and respond appropriately to criticism from supervisors (Ex. 15F/3). The claimant is also markedly limited in her ability to adapt to changes in the work setting (Ex. 15F/3). This opinion is given some weight because Ms. Droge had a treatment relationship with the claimant; however, the significant social and

adaptation limitations that Ms. Droge identified are not consistent with the other evidence of record as summarized above in connection with the "paragraph B" criteria.

At the hearing, Ms. Droge testified that the claimant was not presently able to hold a job or attend classes. This opinion is given little weight because it is conclusory and does not identify specific functional limitations.

\*\*\*

State agency psychological consultant Sallye M. Wilkinson, PhD, provided the following opinion at the initial determination level in April 2015. The claimant can carry out simple instructions and sustain simple, routine tasks (Ex. 1A). She has sufficient concentration to perform routine tasks with conventional work breaks although she would do better in a job involving repetitive tasks that do not require procedural decisions (Ex. 1A). The claimant may need accommodations that include limited interaction with the public, coworkers, and supervisors (Ex. 1A). She can complete a normal workweek (Ex. 1A). This opinion is given great weight because Dr. Wilkinson is familiar with the disability program, and the limitations are consistent both with treatment notes that described the claimant as distractible but also her demonstrated abilities during the psychological consultative examination, as noted above.

At the reconsideration determination level, State [sic] agency psychological consultant Carol L. Adams, PsyD, opined in December 2015 that the claimant may need accommodations including no more than occasional interaction with the public and coworkers, but the claimant does not have any apparent limitations in her ability to interact with supervisors (Ex. 3A). This opinion is given less weight than the opinion of Dr. Wilkinson, which the undersigned finds better accommodates all of the claimant's mental limitations.

(R. 23-24).

### B. The Standard for Evaluating Medical Opinions and "Other Medical Source" Opinions

For claims filed before March 17, 2017, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's]

11

symptoms, diagnosis and prognosis." 20 C.F.R. § 416.927(a)(2). Such opinions may not be ignored and, unless a treating source[6] opinion is given controlling weight, <u>all</u> medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. <u>Id.</u> § 416.927(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2019). A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." <u>Id.</u> at 763 (citing <u>Reid v. Chater</u>, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing <u>Broadbent v.</u>

---

[6]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. § 416.902 (2016).

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. <u>Id.</u>

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. <u>Id.</u>

12

Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

The regulatory factors for weighing all medical opinions are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. § 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). After considering the factors, the ALJ must give reasons in the decision for the weight he gives the medical opinions. Id. 350 F.3d at 1301.

The regulations explain how opinions from medical sources who are not an "acceptable medical source" will be considered and how the ALJ should articulate his evaluation. 20 C.F.R. § 416.927(f).

> (f) Opinions from medical sources who are not acceptable medical sources and from nonmedical sources.
>
> (1) Consideration. Opinions from medical sources who are not acceptable medical sources and from nonmedical sources may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources. Although we will consider these opinions using the same factors as listed in paragraph (c)(1) through (c)(6) in this section, not every factor for weighing

13

opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case. Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

(2) Articulation. The adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

20 C.F.R. § 416.927(f).

### C. Analysis

Considering the ALJ's decision in light of the applicable legal standard, it becomes clear that the ALJ's discussion of Ms. Droge's opinions was more than sufficient to explain the weight accorded to them. As does the court, the ALJ accepted the testimony of Plaintiff and of Ms. Droge that Ms. Droge was a therapist that treated Plaintiff although the ALJ recognized it was a "relatively short treatment relationship" and the record contains no treatment notes from Ms. Droge. (R. 22). Nonetheless, because Ms. Droge is not an "acceptable medical source," she is not a "treating source"

14

as that term is defined in the regulations. 20 C.F.R. § 416.902 (2016). And, her opinion is not a "medical opinion" as that term is defined. 20 C.F.R. § 416.927(a)(1) (2017).

The regulation explains that "it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." Here, although the ALJ found that Ms. Droge had a "relatively short treatment relationship" with Plaintiff, she was the only medical source in the record who had a treatment relationship. However, as the ALJ found, she provided no supporting evidence for her opinions, her limitations are not consistent with the other evidence, and the opinions of Dr. Wilkinson are more consistent with the treatment notes.

As the Commissioner argues, Plaintiff ignores the decision and the evidence as a whole and focuses on the one paragraph in the decision wherein the ALJ stated that he gave some weight to Ms. Droge's opinion. And, Plaintiff even ignores the other paragraph in the decision wherein the ALJ summarized Plaintiff's mental health treatment, including Ms. Droge's opinions. Moreover, Plaintiff treats Ms. Droge's opinions as "treating source" opinions and relies on case law dealing with an ALJ's failure to fully address inconsistencies and ambiguities in his evaluation of such treating source opinions. Plaintiff attempts to expand the requirement to fully address such irregularities in an ALJ's consideration of treating source opinions to include the opinions of therapists by citing Nielson v. Astrue, No. 09-1352-SAC, 2010 WL 4628099, at *4 (D. Kan. Nov. 8, 2010). However, in Nielson the ALJ stated that the therapist was not a

medical source and discounted his opinion on that basis.  Id. 2010 WL 4628099, at *3. The court noted that the therapist was not an "acceptable medical source," but he was an "other medical source" "whose opinions should be considered when determining the severity of a claimant's impairment, and the effect of the impairment on a claimant's ability to work."  Id. at *4.  Here, Ms. Droge's opinions were clearly considered and evaluated in the decision at issue.

While the ALJ in this case might have consolidated all of his evaluation and consideration of Ms. Droge's opinions into one location, a fair reading of the decision as quoted above permits the claimant and this court to follow the ALJ's reasoning.  More is not required.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated February 14, 2020, at Kansas City, Kansas.

        s:/  John W. Lungstrum
        **John W. Lungstrum**
        **United States District Judge**